UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JOSEPH E. ADAMS,

                Plaintiff,

    -against-

PETER DeFOREST, individually,
MICHAEL BILLENS, individually,
LISETTE HITSMAN, individually, and
the TOWN OF UNION VALE, New York,

                Defendants.

-----------------------------------------------------------------x

# 08 CIV. 4214

08 Civ.  (  )

**COMPLAINT**



**Jury Trial Demanded**

       Plaintiff JOSEPH E. ADAMS, by his attorneys Lovett & Gould, LLP, for his complaint respectfully states:

## NATURE OF THE ACTION

    1. This is an action for compensatory and punitive damages, proximately resulting from the Defendants' jointly engaged in conduct under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed him by the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983.

## JURISDICTION

    2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

3. Plaintiff JOSEPH E. ADAMS is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint he was employed by the Defendant Town in its Highway Department and since April 22, 2007 in its Parks and Recreation Department.

4. Defendant PETER DeFOREST (hereinafter "DeForest"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly elected Superintendent of Highways for the Defendant Town. As such he has plenary, unilateral and final decision making authority with respect to the operation of that Department.

5. Defendant MICHAEL BILLENS (hereinafter "Billens"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Defendant Town in its Highway Department as a Heavy Motor Equipment Operator and in the unofficial title of "Foreman".

6. Defendant LISETTE HITSMAN (hereinafter "Hitsman"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was the duly elected Supervisor for the Defendant Town. In said position she also serves as a member of the Town Board of the Defendant Town.

7. Defendant TOWN OF UNION VALE, New York (hereinafter "Town") is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

8. Plaintiff non-disruptively expressed his concerns to DeForest and at least one Town Board member that members of the Highway Department were routinely put at risk by reason of the complete absence of mandatory safety equipment. DeForest and the Town did not take any remedial action in response to Plaintiff's concerns.

9. Because of DeForest and the Town's refusal to take remedial action with respect to these concerns, Plaintiff and another employee of the Highway Department (Christopher Kemlage) determined that in order to best protect and advocate on behalf of their co-workers unionization was required.

10. Under the circumstances Plaintiff openly engaged in organizational and recruitment efforts with the objective of having Local 456 of the International Brotherhood of Teamsters certified as the collective bargaining agent for subordinate employees in the Highway Department.

11. In that connection, Plaintiff and Kemlage arranged for the officials of Local 456 to meet with the Highway Department employees for that purpose. At that meeting, Plaintiff, Kemlage and one other co-worker expressed their desire to unionize and signed "union cards" showing their intent. Defendant Billens and another employee did not agree to become union at that time and expressed opposition to Plaintiff's pro-union sentiments.

12. Upon information and belief, Billens immediately reported to his co-defendant DeForest the identity of those employees who were pro unionization. As a proximate result of Plaintiff's aforementioned associational activities and expressions of opinion on matters of public concern, Defendants DeForest, Billens and Hitsman entered into an

agreement in or about the Summer of 2006 to target Plaintiff (and his pro-union co-workers) for adverse, retaliatory employment action which retaliatory actions were undertaken with the intent of forcing Plaintiff (and his pro-union co-workers) to back off on their union organizational efforts, to break up the unionization of these employees, and to force Plaintiff to leave the employ of the Town by rendering his workplace environment physically intimidating, threatening to his safety and intolerable.

13. Immediately after the meeting with Local 456, DeForest and Billens began expressing anti-union statements to Plaintiff, to wit: "the union won't work here" and "you guys in the union are a problem". Deforest expressed similar anti-union statements to Kemlage, including: calling Kemlage a "trouble maker" for calling in the union, "I [DeForest] can't have a trouble maker here"; advising Kemlage that he should have consulted with him [DeForest] before engaging in union organizational activities; and stating "I [DeForest] can't have a union here".

14. On October 24, 2006, at a meeting among Highway Department staff and representatives of PESH, Plaintiff questioned whether first aid and CPR instruction was required to or should be given to Department staff. In response, Billens in the presence of Deforest advised Plaintiff he would: "Stomp on [his] chest until he bled out".

15. On November 2, 2006, after DeForest specifically advised Plaintiff that Billens was his [DeForest's] spokesperson, Billens told Plaintiff that he and Kemlage would be split up, Plaintiff would not last a week at the job and that he [Billens] would "'dog you until I put you down." Deforest took no action in response to Billens threats of physical violence, despite Billens' conduct being in clear violation of Town personnel policies.

16. Plaintiff reported to Defendant Hitsman the threats made by Billens to Plaintiff's physical safety. Hitsman advised Plaintiff that he would no longer be required to work with Billens. However, when Plaintiff reported to work Defendant DeForest gave Plaintiff an ultimatum – either he work with Billens or he goes home. Out of concern for his personal safety, Plaintiff went home and lost a day's pay. Plaintiff again requested Hitsman take remedial action and she refused indicating "I can't control Pete [DeForest]".

17. Deforest, with the active assistance and participation of Billens, took retaliatory action against Plaintiff by reason of his union organizational activities, union advocacy activities, and expressions of concern about matters of health, safety and welfare, including:

a. Denying him and the other pro-union employees equal overtime in connection with, *inter alia*, snow plowing operations;

b. Singling out Plaintiff and the other pro-union employees for assignment to especially labor intensive work duties;

c. Eliminating so-called "call-out" time, which previously had resulted in additional compensation,

d. Eliminating the long-standing practice of permitting Plaintiff and the other pro-union employees to bring their household garbage to the Town facility at no cost;

e. Denying him the safety benefit of flagmen while Plaintiff performed work on public roadways,

f. Denying him safety equipment for his protection while performing his

job duties and responsibilities, such as chaps, protective eye gear, safety

helmets and ear protection;

g. Assigning Plaintiff to vehicles which were unsafe by reason of one

literally spewing gasoline and the other lacking a working driver's side

window exposing Plaintiff to freezing cold temperatures while plowing

ice and snow;

h. Changing the locks on the workplace doors and refusing to give keys to

Plaintiff and the other pro-union employees thereby denying them ready

access to the bathroom facilities; and *inter alia,*

i. Creating a hostile work environment by alternately ignoring the union

employees, yelling at them, and referring to them as "niggers"; and *inter*

*alia*

j. Assigning Plaintiff to work with Billens who, with DeForest's

authorization and approval sought to coerce Plaintiff's resignation by

humiliating him, degrading him, and threatening him with violent physical

injury.

DeForest did not take any of these similar adverse actions against those members

of the Highway Department who were not actively involved in efforts to unionize.

18. Plaintiff and Kemlage reported Deforest and Billens' retaliatory and

threatening behavior to Defendant Hitsman and requested that she take remedial action to

stop the retaliatory conduct. Rather than take remedial action, Hitsman condoned the

6

behavior and in turn made anti-union statements to Plaintiff, including: "what do you

expect when you go union", "you are not union yet and you are nothing."

19. On or about December 15, 2006, due to Plaintiff's union organizational and

advocacy activities, the Town Board recognized Local 456, I.B.T. as the sole and

exclusive bargaining agent for all employees (including Plaintiff) holding the title of

Motor Equipment Operator and Motor Equipment Operator/Mechanic in the Highway

Department.

20. Also on that date the Union appointed Kemlage as Shop Steward for the

newly formed collective bargaining unit. With regard to that appointment DeForest

expressly refused to accept Kemlage as the Union's representative and advised Kemlage:

"This is not a Union shop and I will do what I want".

21. Thereafter, following an incident in connection with which Billens falsely

imprisoned Kemlage and threatened him with bodily harm, Kemlage reported Billens'

conduct to Deforest. DeForest condoned and/or ratified Billens conduct and instructed

Kemlage that he was required to continue working with Billens despite his physically

threatening conduct stating, *inter alia*, "I'm tired of you and your Union, you'll be on the

outside looking in. It's going to happen soon".

22. In furtherance of the retaliatory objectives referenced *supra*, Deforest advised

Plaintiff on the day before he was scheduled to commence his annual six week leave

(which leave Plaintiff had received approval for before his hire in 2001 and which he

took every year at the same time) that Plaintiff was only permitted to take off two of the

six weeks. Deforest specifically advised Plaintiff that Defendant Hitsman and the Board

determined that if Plaintiff did not return to work in two weeks he would be fired.

23. That evening, the Superintendent of Parks and Recreation advised Plaintiff that Deforest was laughing about his and Histman's plan to fire Plaintiff for taking his annual leave. The Superintendent then offered Plaintiff a position in the Parks and Recreation Department as a lateral transfer, with the same rate of pay. However, that position would not provide overtime opportunities equal to those provided in the Highway Department.

24. The Union's labor representative contacted the Town's attorney to discuss the denial of leave time previously approved and agreed to as a term of employment. In response, the Town's attorney advised that Plaintiff would be permitted to take only four of his five weeks of leave.

25. Thereafter, DeForest advised Plaintiff that if he agreed to transfer to the Parks and Recreation Department, the Town would approve the entire six weeks of leave.

26. Under circumstances where he was told he would be fired if he did not return to work within the arbitrary deadlines set and changed by the Defendants, Plaintiff was left with no alternative but to seek a transfer to the Parks and Recreation Department.

27. On or about April 22, 2007, Plaintiff was laterally transferred to the Parks and Recreation Department. As such, he was the most senior employee in that Department.

28. In or about June 2007, during a conversation between Kemlage and DeForest, Kemlage indicated he was going to call the Union. In response, DeForest told Kemlage "I'll push you out, just like I did Ed [Adams]."

29. While working in the Parks and Recreation Department, Plaintiff encouraged another employee to join Local 456 and executed a "union card." During the summer of

2007, the Town Board recognized Local 456, I.B.T. as the sole and exclusive bargaining agent for employees in the Parks and Recreation Department.

30. Thereafter, at the end of September 2007, Deforest approached Plaintiff while Plaintiff was working at the Town's "dump day" event and, in an aggressive manner, directed Plaintiff to go home. When Plaintiff objected, stating his boss told him to be there that day, Deforest said "he did not care" and then told Plaintiff "get out of here."

31. Plaintiff immediately advised Hitsman of this interaction.  Seeing that she was unwilling to take any action, Plaintiff advised Hitsman he would contact the union to file an improper practice charge on Monday. In response, Hitsman told Plaintiff he was no longer in the union.  In fact, Plaintiff had never resigned from the union.

32. On or about July 7, 2007, Kemlage commenced a federal civil rights action in the United States District Court, Southern District of New York (Kemlage v. DeForest, et al., 07 Civ. 06366 (KMK)(LMS)).  In that connection, on or about October 10, 2007, defendants were served with "Plaintiff's Rule 26 Mandatory Disclosure" which identified the Plaintiff herein as a witness in Kemlage's lawsuit. In addition, documents produced identified Plaintiff as a witness to anti-union comments made by defendants.

33. In furtherance of their retaliatory objectives and to rid the Town of employees who were engaging in union organizational efforts, on or about December 13, 2007:

> a) Plaintiff was advised that his full-time position in Parks and Recreation was being decreased to a nine-month position and thus he was losing three months of salary in 2008;

b) The other Parks and Recreation employee who joined the union was also advised that his full-time position in Parks and Recreation was being decreased to a nine-month position; and

c) Plaintiff was advised that Kemlage's position in the Highway Department was being eliminated.

34. Plaintiff's position was reduced to a nine-month position despite the fact that he had more seniority and the job reduction was in violation of civil service laws and rules. Also, since that time, the Town has authorized the Parks and Recreation Superintendent to hire at least one part time employee to perform the same duties and responsibilities as Plaintiff.

35. As a proximate result of Defendants' conduct Plaintiff has been: the subject of on going retaliatory actions aimed at forcing him to leave the Town's employ; the subject of unequal treatment in comparison to similarly situated employees; punished financially for exercising his rights as guaranteed by the First Amendment; physically threatened and placed in fear for his and his co-workers' personal safety; forced to work in dangerous and unsafe conditions; publicly humiliated and embarrassed; rendered anxious; caused pain, suffering and emotional upset; and otherwise rendered sick and sore.

## AS AND FOR A FIRST CLAIM

36. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "35", inclusive.

37. Under the premises Defendants' conduct violated Plaintiff's right of association as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

38. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "35", inclusive.

39. Under the premises Defendants' retaliatory conduct violated Plaintiff's rights of free speech and to petition government for the redress of grievances as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM

40. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "35", inclusive.

41. Under the premises Defendants' conduct denied Plaintiff the right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully demanded:

    a.  Awarding as against all Defendants such compensatory damages as the jury may determine,

    b.  Awarding as against the individually named Defendants such punitive damages as the jury may impose,

   c.  Awarding as against all Defendants reasonable attorney's fees and

       costs, and,

   d.  Granting such other and further relief as to the Court seems just and

       proper.

Dated: White Plains, N.Y.
      May 1, 2008

                         LOVETT & GOULD, LLP
                         By:

                         Kim Berg (KB1425)
                         Attorneys for Plaintiff
                         222 Bloomingdale Road
                         White Plains, New York 10605
                         914-428-8401